# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KOURTNEY W. HOLLINGSWORTH,

     *Plaintiff,*

    v.

THOMAS J. VILSACK,

     *Defendant.*

Civil Action No. 23-2427 (LLA)

## MEMORANDUM OPINION

Kourtney W. Hollingsworth brings this action against Thomas J. Vilsack in his official capacity as Secretary of Agriculture.  Dr. Hollingsworth alleges that her employer, the U.S. Department of Agriculture (the "Agency"), discriminated against her, created a hostile work environment, and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C § 701 *et seq.*  Pending before the court is the Agency's motion to dismiss.  ECF No. 13.  For the reasons explained below, the court will grant the Agency's motion and dismiss the case.

## I.    Factual Background

The following factual allegations drawn from Dr. Hollingsworth's amended complaint, ECF No. 12, are accepted as true for the purpose of evaluating the motion before the court, *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  The court also takes judicial notice of documents from the administrative proceedings that were attached to the complaint and briefing. *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018) (explaining that "[i]n employment discrimination cases, courts often take judicial notice of [Equal Employment

Opportunity Commission ("EEOC")] charges and EEOC decisions" in evaluating a motion to dismiss).

Dr. Hollingsworth worked for the Agency as a National Youth Coordinator in its Office of Partnership and Public Engagement.  ECF No. 12 ¶ 23.  She is a multi-racial woman with physical disabilities—a visual impairment called Keratoconus and a back issue.  *Id.* ¶¶ 19, 25, 36.  For the relevant period, her first-level supervisor was Bill Ashton, a white man, and her second-level supervisors were either Jackie Davis-Slay or Kenya Nicholas.  *Id.* ¶¶ 24, 28.[1]

In March 2021, a colleague from a different department, Bryan Zulko, questioned Dr. Hollingsworth's qualifications for her position and made "disparaging and humiliating remarks to and about her."  *Id.* ¶ 26; *see id.* ¶ 27.  Mr. Zulko, a white man, "refused to address [Dr. Hollingsworth] as Doctor" and "cut her off during meetings."  *Id.* ¶ 27.  He further "singled her out[] and yelled at her" in meetings.  *Id.* ¶ 26.  Mr. Zulko led "Agency Coordinator liaison meetings," which Dr. Hollingsworth sought to join, but Mr. Zulko "never responded to her requests" to attend.  *Id.* ¶ 31.

That same month, Mr. Ashton began having inappropriate conversations with Dr. Hollingsworth.  *Id.* ¶¶ 28-29.  Mr. Ashton asked her if she had a boyfriend and if she wanted to have children, *id.* ¶ 28, and he "made uncomfortable jokes to her about her having his kids," *id.* ¶ 29.  He asked why she would not "accept him on her social media accounts," told her that she "'looked really fine' in a dress in a photo[graph] on her social media page," and asked about a man in one of her social media photographs.  *Id.* ¶ 28.  Mr. Ashton asked Dr. Hollingsworth for her

---

[1] Dr. Hollingsworth is not clear about when Ms. Nicholas became her second-line supervisor.  She initially alleges that Ms. Nicholas became her second-line supervisor in September 2022, ECF No. 12 ¶ 24, but elsewhere refers to Ms. Nicholas as her second-line supervisor as early as January 2022, *id.* ¶ 33.

home address to send her "work-related materials," but he instead send her a "pen and gift" set. *Id.* ¶ 29.  Dr. Hollingsworth confirmed with the Agency's Human Resources personnel that he had not sent similar gifts to male employees.  *Id.* ¶ 30.  Mr. Ashton "repeatedly referred to and asked [Dr. Hollingsworth] about the gift."  *Id.*

At various times, Mr. Ashton would ask Dr. Hollingsworth to turn on her video during meetings, one time remarking that her smile "brightened [his] day."  *Id.* ¶ 29 (alteration in original) (alleging an incident in March 2021); *see id.* ¶ 35 (alleging a similar incident in January 2022). "As a Bargaining Unit Employee, [Dr. Hollingsworth] had the personal discretion to decide whether or not to use a camera during meeting."  *Id.* ¶ 35.  Mr. Ashton would also inquire into Dr. Hollingsworth's personal medical issues.  *Id.* ¶¶ 29 (alleging an incident in March 2021), 37 (alleging an incident "[i]n or around February 2022").

As a result of this unwanted attention, Dr. Hollingsworth sought reasons to keep her camera off during meetings, "changed her social media profile settings to private, and ultimately blocked Mr. Ashton's number on her personal phone."  *Id.* ¶ 29.  She also "repeatedly reported to both Bill Ashton and Kenya Nicholas that she was being harassed at work, but . . . no action was taken on her complaints."  *Id.* ¶ 32.

In January 2022, Dr. Hollingsworth's second-level supervisor, Ms. Nicholas, repeatedly emailed and called her, but then accused her of being nonresponsive.  *Id.* ¶ 33.  On January 6, 2022, Mr. Ashton agreed to provide all documents for required meetings in Microsoft Word—a format that was compatible with Dr. Hollingsworth's assistive technology—as an accommodation for her disability, but he "failed to follow through with the agreed upon accommodation."  *Id.* ¶ 34. "As a result, [Dr. Hollingsworth] was unable to attend meetings."  *Id.*  That same day, Dr. Hollingsworth contacted an Agency Equal Employment Opportunity ("EEO") counselor to lodge an informal

complaint of discrimination on the basis of sex, race, and disability, as well as sexual harassment and retaliation. *Id.* ¶ 6.

In February 2022, Dr. Hollingsworth requested Office of Workers' Compensation Programs ("OWCP") leave because she had suffered an automobile accident on the job, and she recorded her leave as such in the timekeeping system. *Id.* ¶ 38. The Agency controverted whether the accident was within the scope of her employment, *id.* ¶ 10, and Mr. Ashton changed her leave record to reflect leave without pay under the Family and Medical Leave Act ("FMLA"). *Id.* ¶¶ 38-39. The OWCP later investigated and determined that her leave should have been classified as OWCP leave. *Id.* ¶ 40.

In April 2022, Mr. Ashton instructed Dr. Hollingsworth to "add her medical appointments to a publicly shared spreadsheet" and emailed her coworkers notifying them when she had doctors' appointments. *Id.* ¶ 41. He would also contact her when she was on approved medical leave. *Id.*

In May 2022, Mr. Ashton told Dr. Hollingsworth about a leadership program called the George W. Bush Stand to Veterans Program. *Id.* ¶ 42. He verbally approved her request to attend and provided her with a letter of recommendation. *Id.* ¶ 42. Mr. Ashton later told Dr. Hollingsworth that she would need to use leave to attend the program (as opposed to attending while on the job). *Id.* ¶ 43. She asserts that this occurred after she declined to attend a mediation with Mr. Ashton and Ms. Nichols related to her EEO complaint. *Id.*

On several occasions during her employment with the Agency, Dr. Hollingsworth requested accommodations for her eye condition and back injury. In January 2021, she asked for "large computer screens, computer readers, and rest periods." *Id.* ¶ 25. In February 2022, she asked for "rest periods, time off, extra time, a chair with lumbar support, and time for physical therapy, doctor's appointments, and treatments, and adaptive technology such as Zoom Text and

Dragon apps, 508 compliant documentation, a computer reader, and a large monitor."  *Id.* ¶ 36; *see id.* ¶ 44.  That month, she received "a larger monitor" and technology that would read text aloud to her.  *Id.* ¶ 25.  Dr. Hollingsworth renewed her request for reasonable accommodations in June 2022.  *Id.* ¶¶ 36, 44.

The Agency terminated Dr. Hollingsworth's employment on June 16, 2022, "based on her disability and her attendance at work."  *Id.* ¶ 45.

## II.    Procedural History

As noted, Dr. Hollingsworth contacted the Agency's EEO counselor on January 6, 2022 to lodge an informal complaint of discrimination on the basis of sex, race, and disability, as well as sexual harassment and retaliation.  ECF No. 12 ¶ 6; *see* 29 C.F.R. § 1614.105(a) (setting forth the process for an informal complaint).  On April 19, 2022, she filed a formal complaint.  *Id.* ¶ 7-8; *see* 29 C.F.R. § 1614.106 (setting forth the process for a formal complaint).  Dr. Hollingsworth amended her EEO complaint five times between April 19, 2022 and September 15, 2022.  ECF No. 13-3, at 3.    The Agency investigated Dr. Hollingsworth's EEO complaint through December 2022.  *Id.* ¶¶ 10-12.  On May 23, 2023, a final decision was issued in the Agency's favor.  *Id.* ¶ 14; ECF No. 13-3.

Dr. Hollingsworth brought this action in August 2023.  ECF No. 1.  After the Agency filed a motion to dismiss, ECF No. 11, Dr. Hollingsworth amended her complaint in February 2024, ECF No. 12.  In her amended complaint, Dr. Hollingsworth alleges sex discrimination (Count I), race discrimination (Count II), hostile work environment (Count III), and retaliation (Count IV) in violation of Title VII, and disability discrimination (Count V) and interference (Count VI) in violation of the Rehabilitation Act.  ECF No. 12 ¶¶ 51-136.  She seeks $1 million in compensatory

damages in addition to declaratory and injunctive relief and attorney' fees.  ECF No. 12, Prayer for Relief.

The Agency moves to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Dr. Hollingsworth failed to exhaust her administrative remedies for some of her claims, ECF No. 13-1, at 7-10, and that she fails to state a claim with respect to the others, *id.* at 10-28.  The motion has been fully briefed.  ECF Nos. 13, 14, 17.

### III.    Legal Standard

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).  Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice.  *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).  While a plaintiff need not establish a prima facie case of discrimination at the pleading stage, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002), she must allege sufficient facts beyond mere legal conclusions to allow the court to draw a reasonable inference of discrimination from the complaint.  "If a Title VII plaintiff fails to plead 'sufficient factual matter' to state a discrimination claim that is

'plausible on its face,' then the district court should dismiss the case before discovery." *Chambers v. District of Columbia*, 35 F.4th 870, 878 (D.C. Cir. 2022) (en banc) (quoting *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015)); *Rouse v. Berry*, 680 F. Supp. 2d 233, 238 (D.D.C. 2010).

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)). As noted, the court may also take judicial notice of the plaintiff's EEO materials without converting a motion to dismiss into one for summary judgment. *Golden*, 319 F. Supp. 3d at 366 n.2.

### IV.    Discussion

#### A.    Exhaustion

A plaintiff may not initiate a civil action under Title VII or the Rehabilitation Act until she has exhausted her administrative remedies for each discrete discriminatory act. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 33-34 (D.C. Cir. 2014) (citing 29 U.S. § 794a(a)(1)). For federal employees, exhaustion allows the federal agency "to handle matters internally whenever possible." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985). The exhaustion process begins when the federal employee "initiate[s] contact" with her agency's EEO counselor, which must be done within forty-five days of the alleged discriminatory act. 29 C.F.R. § 1614.105(a)(1). "Each discrete discriminatory act starts a new clock for filing charges alleging that act"—meaning any claim arising out of an act not raised with an EEO counselor within forty-five days cannot be pursued. *Morgan*, 536 U.S. at 113.

The forty-five-day rule differs slightly in the context of hostile work environment claims, which "are different in kind from discrete acts." *Id.* at 115. By nature, hostile work environment claims "involve[] repeated conduct" and "therefore cannot be said to occur on any particular day"; rather, they "occur[] over a series of days or perhaps years." *Id.* Accordingly, a hostile work environment is timely "[p]rovided that an act contributing to the claim occurs within the filing period." *Id.* at 117. But the act must be one that "contribut[es] to the claim," *id.*—that is, the untimely and timely actions must be "adequately connected to each other . . . as opposed to being an array of unrelated discriminatory or retaliatory acts," *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011).

If the employee's grievance is not resolved through informal counseling, the employee may file a formal complaint, which the agency investigates and adjudicates. 29 C.F.R. § 1614.106. The issues raised in the formal administrative complaint are the ones that may be addressed in later court proceedings. *Bain v. Off. of the Att'y Gen.*, 648 F. Supp. 3d 19, 44 (D.D.C. 2022). "A complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint." 29 C.F.R. § 1614.106(d). The agency must "acknowledge receipt of . . . an amendment to a complaint in writing." *Id.* § 1614.106(e). A plaintiff who amends her complaint to allege new instances of discrimination or retaliation does not need to reengage in the informal EEO process, because the amendment puts the agency on notice of the conduct at issue. *See Sanders v. Kerry*, 180 F. Supp. 3d 35, 43 (D.D.C. 2016) (collecting cases); *see also Weber v. Battista*, 494 F.3d 179, 184 (D.C. Cir. 2007) (holding that the plaintiff exhausted her administrative remedies by amending her EEO complaint).

The failure to exhaust administrative remedies is an affirmative defense, which means the defendant bears the burden to plead and prove the plaintiff's failure to exhaust. *Bowden v. United*

*States*, 106 F.3d 433, 437 (D.C. Cir. 1997).  If the defendant meets this burden, then the burden shifts, and the plaintiff must "plead[] and prov[e] facts supporting equitable avoidance of the defense." *Id.*

In its motion to dismiss, the Agency argues that Dr. Hollingsworth failed to exhaust any discrete acts of discrimination that occurred before November 21, 2021 (forty-five days before she lodged her informal EEO complaint on January 6, 2022), ECF No. 13-1, at 8-9, and that she failed to exhaust several claims that arose after she engaged the informal EEO process in January 2022 because she did not subsequently amend her complaint to include new incidents of alleged discrimination, *id.* at 9-10.  The court agrees that neither set of claims was properly exhausted but that Dr. Hollingsworth may rely on certain actions that took place before November 21, 2021 to support her hostile work environment claim.

### 1.    Incidents Before November 21, 2021

Dr. Hollingsworth first contacted an EEO counselor on January 6, 2022.  ECF No. 12 ¶ 6. This means that any discrete acts of discrimination and retaliation that occurred more than forty-five days prior—before November 21, 2021—are untimely unless they serve as the basis for a timely hostile work environment claim.

Dr. Hollingsworth alleges four discriminatory acts that took place before November 21, 2021:  (1) the March 2021 meeting in which Mr. Zulko questioned her qualifications, made disparaging remarks, and refused to address her as "Doctor," *id.* ¶ 26; (2) the March 2021 events in which Mr. Ashton inquired about her dating life, told her "she looked really fine" and sent a pen and a gift to her home, *id.* ¶¶ 28-29; (3) Mr. Zulko's March 2021 exclusion of Dr. Hollingsworth from Agency Coordinator liaison meetings, *id.* ¶ 31; and (4) the April 2021 failure on the part of Mr. Ashton and Ms. Nicholas to act on "her repeated complaints of workplace harassment," *id.* ¶ 32.  Because Dr. Hollingsworth did not lodge an informal complaint concerning

any of these actions, and because they occurred more than forty-five days before her January 6, 2022 informal EEO complaint, she may not proceed on these claims as discrete acts of discrimination. *Morgan*, 536 U.S. at 113. Dr. Hollingsworth seemingly concedes this, contending that "while such acts might be untimely as discrete claims, they form part of an ongoing pattern of harassment contributing to a hostile work environment." ECF No. 14, at 4.

Whether any of the four allegations described above constitutes part of Dr. Hollingsworth's hostile work environment claim turns on whether the allegations are "adequately linked" to the allegations in that claim. *Baird*, 662 F.3d at 1251. "The question whether such incidents 'are adequately linked into a coherent hostile environment claim,' . . . is not easily answered." *Panarello v. Zinke*, 254 F. Supp. 3d 85, 101 (D.D.C. 2017) (quoting *Baird*, 662 F.3d at 1251). Although there is no concrete test, it is typically "sufficient that the 'incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'" *Id.* (alteration in original) (emphasis omitted) (quoting *Morgan*, 536 U.S. at 120). Dr. Hollingsworth argues that the pre-November-2021 actions form part of her hostile work environment claim because she experienced a pattern of harassment that stemmed from March 2021 until her termination in June 2022. ECF No. 14, at 4. The Agency counters that these actions "do not support a coherent hostile work environment claim because the acts are isolated, discrete, dissimilar, and unrelated." ECF No. 17, at 3.

The court agrees with Dr. Hollingsworth as it pertains to the actions involving Mr. Ashton and Ms. Nicholas. Her allegations concerning Mr. Ashton's unwelcome comments and his failure to address her alleged mistreatment by Mr. Zulko relate to her timely claims that Mr. Ashton was harassing her in other ways by refusing to provide her meeting materials in the agreed-upon format for her reasonable accommodation, recoding her leave, and asking about her medical

appointments.   The same is true for Ms. Nicholas's failure to address her concerns about Mr. Zulko, which relate to her subsequent claims that Ms. Nicholas was treating her unfairly by repeatedly calling and emailing her and then accusing her of being unresponsive.  *See Panarello*, 254 F. Supp. 3d at 101 (quoting *Morgan*, 536 U.S. at 120).  Giving Dr. Hollingsworth the benefit of all reasonable inferences, as this court must when evaluating the Agency's motion to dismiss, *see Iqbal*, 556 U.S. at 678, she has, for purposes of exhaustion, adequately alleged a coherent hostile work environment such that she can rely on the March and April 2021 allegations concerning Mr. Ashton and Ms. Nicholas.  However, the same cannot be said for her allegations concerning Mr. Zulko, as those were isolated incidents involving a different employee and thus do not coherently relate to her other allegations of a hostile work environment.  *Panarello*, 254 F. Supp. 3d at 101.

### 2.      Claims Not Presented to the Agency

A plaintiff may not bring claims "based on conduct that she failed to identify in her EEO complaint."  *Bain*, 648 F. Supp. 3d at 47.  The Agency contends that the following five actions were not raised at the administrative level: (1) the January 2022 meeting where Mr. Ashton asked Dr. Hollingsworth to turn on her camera; (2) the Agency's failure to accommodate on February 16, 2022;   (3) the   Agency's    failure   to   accommodate   on   June 13, 2022; (4) Dr. Hollingsworth's June 16, 2022 termination; and (5) any claim that the Agency interfered with Dr. Hollingsworth's reasonable accommodation.  ECF No. 13-1, at 9-10.  The court agrees that these incidents were not raised at the administrative level and cannot serve as the basis for any discrete claim under Title VII or the Rehabilitation Act.

As explained, Dr. Hollingsworth brought her informal EEO claim on January 6, 2022, filed her formal EEO complaint on April 19, 2022, and subsequently amended her formal complaint five times between April 20, 2022 and September 15, 2022.  ECF No. 13-3, at 3; ECF No. 17-1,

at 1-2.  On September 15, 2022, the Agency acknowledged receipt of her formal complaint and

amendments, and it listed in detail each incident that it would be investigating.  *See* ECF No. 17-1,

at 2-3 (listing allegations without mentioning the above five events).  This list included incidents

that had occurred after January 6, 2022, but were the subject of her amendments.  *See id.* (listing,

for example, the allegation that Dr. Hollingsworth had not been permitted to attend the George

W. Bush Stand to Veterans Program in June 2022).  The Agency's letter expressly stated that if

Dr. Hollingsworth "d[id] not agree with the defined claims, [she] must provide [the Agency] with

sufficient reasons, in writing, within 7 calendar days of receipt of this letter."  *Id.* at 4.  At no point

did Dr. Hollingsworth contend that the Agency had omitted any of her claims.  *See* ECF No. 13-3

(listing the allegations considered in the final agency decision).  Accordingly, Dr. Hollingsworth

had the opportunity to raise the five allegations in her EEO complaint, and her failure to do so—

despite amending her complaint to include other allegations—means that she has failed to

administratively exhaust them.

Dr. Hollingsworth resists this conclusion, arguing that the five allegations are "reasonably

related" to her exhausted claims and that she raised them later in the EEO investigation, citing a

November 2023 affidavit that she submitted during the formal EEO investigation.  ECF No. 14-1,

at 6.  The court is not persuaded.

Before the Supreme Court's decision in *Morgan*, the D.C. Circuit allowed plaintiffs to raise

in federal court claims that were "like or reasonably related to the allegations of the charge and

growing out of such allegations."  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)

(quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)).  But even in that

circumstance, the Court acknowledged that "[t]he goals behind the requirement of prior resort to

administrative relief would be frustrated if the filing of a general charge with the EEOC would

open up the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship." *Id.* at 908 (quoting *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)).

After the Supreme Court held in *Morgan* that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act," 536 U.S. at 113, there has been some question whether *Park*'s "reasonably related" test remains good law as it pertains to claims that arose during the EEO process but were not the subject of an amendment to the complaint. The D.C. Circuit has thrice declined to decide the issue. *Webster v. Del Toro*, 49 F.4th 562, 568 (D.C. Cir. 2022); *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010), *Weber*, 494 F.3d at 183-84. In the absence of guidance from the D.C. Circuit, most courts in this district have concluded that *Morgan* displaced the "reasonably related" rule. *See Bain*, 648 F. Supp. 3d at 45; *Rashad v. Wash. Metro. Area Transit Auth.*, 945 F. Supp. 2d 152, 166 (D.D.C. 2013) (collecting cases). *But see Mount v. Johnson*, 36 F. Supp. 3d 74, 84-85 (D.D.C. 2014) (collecting cases continuing to apply the reasonably related rule). This court adopts the majority rule because it is more consistent with *Morgan*'s command that discrete claims of discrimination be treated individually. 536 U.S. at 113; *see id.* at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"). The majority rule also fully accounts for 29 C.F.R. § 1614.106(e), which allows a plaintiff to amend

her complaint during the pendency of the EEO process.  Accordingly, Dr. Hollingsworth cannot raise in federal court the five allegations she did not include in her EEO complaint.[2]

Dr. Hollingsworth fares no better in trying to save her unexhausted claims by reference to her November 2023 affidavit.  This affidavit was not part of Dr. Hollingsworth's EEO complaint—instead, she shared this information as part of the EEO investigation process fourteen months after the Agency accepted her formal complaint in September 2022.  "[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role[.]"  *Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) (alteration in original) (quoting *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989)).  Accordingly, the Agency is correct that Dr. Hollingsworth did not exhaust her five new claims during the administrative process.

The Agency argues that the consequence of Dr. Hollingsworth's failure to exhaust these claims is that the court must dismiss Counts V (Disability Discrimination) and VI (Interference with the Rehabilitation Act) in their entirety.  ECF No. 13-1, at 10.  The court agrees in part with respect to Count V and agrees in full with respect to Count VI.

In Count V, Dr. Hollingsworth appears to allege both a failure to accommodate her requests for "Section 508 compliant documentation" and "a chair with lumbar support," ECF No. 12 ¶¶ 127-28, and discrimination on the basis of her disability, *id.* ¶ 129 ("The Defendant used

---

[2] Dr. Hollingsworth contends that the Agency "instructed" her that "there were claims in her amended complaint which did not reflect new claims of discrimination and did not require amendment but should instead be presented directly to the investigator."  ECF No. 14-1, at 5-6. This is true as far as it goes, which is not far.  In the Agency's September 15, 2022 letter accepting her formal EEO charge, the Agency explained that it was accepting new allegations of harassment from her April 2022 amendments "as additional instances of the harassment claim," rather than as a new claim for discrimination.  ECF No. 17-1, at 1 n.2.  But nowhere in that letter does the Agency suggest that Dr. Hollingsworth could raise new claims of discrimination, retaliation, or interference without amending her formal EEO complaint.

this disability status to harass, demean, degrade, and humiliate the Plaintiff."). Dr. Hollingsworth's failure-to-accommodate claim is premised on her February 2022 and June 2022 requests for reasonable accommodations, *see id.* ¶¶ 36, 44, so it cannot proceed given her failure to exhaust her administrative remedies for these requests.

The same cannot be said for her claim of disability discrimination. Dr. Hollingsworth raised several allegations in her EEO complaint that could support a claim of disability discrimination, including (1) that she was unable to attend a meeting in January 2022 because Mr. Ashton did not provide the meeting documents in Word format, which they had previously agreed to as a reasonable accommodation; *compare* ECF No. 17-1, at 2 ¶ 3, *with* ECF No. 12 ¶ 34;[3] (2) that Mr. Ashton asked her "uncomfortable, personal questions about her doctor visits" in February 2022, *compare* ECF No. 17-1, at 3 ¶ 5(a) & (f), *with* ECF No. 12 ¶ 37; and (3) that Mr. Ashton asked her to add her medical appointments to a public office spreadsheet in April 2022; *compare* ECF No. 17-1, at 2 ¶ 4(f), *with* ECF No. 12 ¶ 41. Because Dr. Hollingsworth administratively exhausted several claims related to disability discrimination, the court will consider that part of Count V on the merits.

In Count VI, Dr. Hollingsworth alleges interference with her rights under the Rehabilitation Act, ECF No. 12 ¶¶ 131-36. The Rehabilitation Act "makes it unlawful for a federal employer 'to coerce, intimidate, threaten[,] or interfere with any individual' in the exercise or enjoyment of 'any right granted' under the statute." *Menoken v. Dhillon*, 975 F.3d 1, 9

---

[3] Dr. Hollingsworth does not allege this as part of her failure-to-accommodate claim. *See* ECF No. 12 ¶¶ 125-28. And if she had, it would fail on the merits because she does not contend that Mr. Ashton denied her request for a reasonable accommodation, but instead that he agreed to one but "failed to follow through," causing her to miss one or more meetings. *Id.* ¶ 34. Courts have held that the failure to provide an agreed-upon reasonable accommodation "on one occasion, or even a handful of sporadic occasions," does not constitute the denial of an accommodation under the Rehabilitation Act. *Welch v. Skorton*, 299 F. Supp. 3d 102, 109-110 (D.D.C. 2018).

(D.C. Cir. 2020) (emphasis omitted) (quoting 42 U.S.C. § 12203(b)).  Interference is distinct from retaliation, *id.* at 9-10, and includes an agency's failure to "engage in good faith to determine what accommodation might be appropriate," deliberate attempts to delay the processing of a request for a reasonable accommodation, and leveraging an employee's need for an accommodation to extract other concessions, *id.* at 11.  Dr. Hollingsworth alleged nothing of this sort in her EEO complaint, precluding her from raising an interference claim in this court.  The closest she comes, both in her EEO complaint and in her amended complaint, is her allegation that the Agency denied her requests for leave under the FMLA.  ECF No. 17-1, at 2 ¶ 2, ECF No. 12 ¶ 134.  While that might give rise to a claim for interference under the *FMLA* statute, it provides no basis for a claim for interference under the *Rehabilitation Act*.  *Cf. Porfiri v. Eraso*, 121 F. Supp. 3d 188, 198 (D.D.C. 2015) (addressing Rehabilitation Act and FMLA claims separately).  The court will dismiss Count VI.

*     *     *

In summary, the court concludes that the following incidents cannot serve as the basis for discrete claims because they have not been exhausted:

- The March 2021 meeting in which Mr. Zulko questioned Dr. Hollingsworth's qualifications, made disparaging remarks, and refused to address her as "Doctor," ECF No. 12 ¶¶ 25-26;

- The March 2021 events in which Mr. Ashton inquired about her dating life, told her "she looked really fine," and sent a pen and a gift to her home, *id.* ¶¶ 28-29;

- The March 2021 "prohibit[ion]" on attending Agency Coordinator liaison meetings by Mr. Zulko, *id.* ¶ 31;

- The April 2021 failure on the part of management to act on "her repeated complaints of workplace harassment," *id.* ¶ 32;

- The January 2022 meeting where Mr. Ashton asked Dr. Hollingsworth to turn on her camera, *id.* ¶ 35;

16

- The Agency's failure to accommodate on February 16, 2022, *id.* ¶¶ 36, 44;

- The Agency's failure to accommodate on June 13, 2022, *id.*;

- Dr. Hollingsworth's June 16, 2022 termination, *id.* ¶ 45;

- Any claim that the Agency interfered with Dr. Hollingsworth's rights under the Rehabilitation Act, *id.* ¶¶ 131-36.

Dr. Hollingsworth may, however, use these "acts as background evidence in support of a timely claim" of discrimination or retaliation. *Morgan*, 536 U.S. at 113.

## B.    Discrimination Claims

Under Title VII, it is unlawful for an employer to discriminate against an employee with respect to their "compensation, terms, conditions, or privileges of employment" because of their "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Rehabilitation Act similarly prohibits discrimination on the basis of disability. 29 U.S.C. § 794(a). A plaintiff bringing a discrimination claim under Title VII or the Rehabilitation Act must allege that she belongs to a protected class, that she suffered an adverse employment action, and that a causal connection exists between her protected characteristic and the adverse employment action. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (Title VII); *Doak v. Johnson*, 19 F. Supp. 3d 259, 271 (D.D.C. 2014) (Rehabilitation Act). There is no dispute that Dr. Hollingsworth is a member of a protected class on the basis of her sex and her race, ECF No. 12 ¶¶ 19, 75, or that she is a person with a disability, *id.* ¶ 25. The court must therefore address whether Dr. Hollingsworth has sufficiently alleged that she suffered an adverse action that was causally connected to her sex, race, or disability. The court concludes that she has sufficiently alleged several adverse actions, but that she fails to plausibly allege a connection between those actions and any protected trait.

### 1.    Adverse Actions

The Supreme Court recently clarified the standard for an actionable adverse employment action in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).  There, the Court explained that a plaintiff must simply allege "some harm" regarding the terms or conditions of her employment to support a disparate-treatment claim.  *Id.* at 350.  That holding is largely consistent with the D.C. Circuit's recent decision in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022) (en banc), in which the Circuit held that a plaintiff need only show some change with respect to the terms and conditions of employment (as opposed to an "objectively tangible harm") to plead an adverse action.[4]  *Id.* at 874-75.  Although the parties briefed this case before *Muldrow* was decided, it applies.  *See Thorpe v. Hous. Auth. of Durham*, 393 U.S. 268, 281 (1969) (explaining that courts must apply the law in effect at the time of decision); *see also Overseas Shipholding Grp., Inc. v. Skinner*, 767 F. Supp. 287, 291 (D.D.C. 1991) ("[T]he Court must review the agency's decision under the lens of current legal precedent.").

The Agency first argues that the adverse-action standard enunciated in *Chambers* (and now *Muldrow*) does not apply to Dr. Hollingsworth's Title VII claims because Dr. Hollingsworth is covered by the federal-sector provisions of Title VII, whereas the plaintiffs in *Chambers* (and *Muldrow*) were not.  ECF No. 13-1, at 11-14.[5]  In the Agency's view, a federal-employee plaintiff may only bring a claim based on an adverse "personnel action" as defined by the Civil Service

---

[4] *See Muldrow*, 601 U.S. at 364-65 (Kavanaugh, J., concurring) ("As I see it and as the D.C. Circuit saw it [in *Chambers*]," "[t]he discrimination is harm.  The only question then is whether the relevant employment action changes the compensation, terms, conditions, or privileges of employment. . . .  I expect that the [majority's] approach and my preferred approach will land in the same place and lead to the same result.").

[5] The Agency does not dispute that the *Chambers* standard applies to Dr. Hollingsworth's claim for disability discrimination under the Rehabilitation Act.  *See Bain*, 648 F. Supp. 3d at 51 (applying *Chambers* to claims under the Rehabilitation Act).

Reform Act, 5 U.S.C. §§ 2302(a)(2)(A)(i)-(xi).  ECF No. 13-1, at 11.  The court disagrees.  The D.C. Circuit has consistently held that the private- and federal-sector provisions of Title VII should be construed similarly.  *See Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007); *Singletary v. District of Columbia*, 351 F.3d 519, 523-24 (D.C. Cir. 2003); *see also Bain v. Off. of the Att'y Gen.*, 648 F. Supp. at 54 ("[The *Chambers* Court] did not so much as hint that the private-sector and federal-sector discrimination provisions should no longer be construed alike.  If anything, it affirmed the status quo.").  Moreover, the *Chambers* Court overruled *Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999), which itself involved a federal-sector employee.  *See Chambers*, 35 F.4th at 882.  This suggests that the *Chambers* Court intended its interpretation of the adverse action requirement to apply to all Title VII discrimination claims, not just those brought by private-sector employees.  *See id*.  Accordingly, the court will analyze Dr. Hollingsworth's claims under *Chambers* and *Muldrow*.

The Agency next argues that the following acts are not adverse actions:

- Ms. Nicholas's repeated emails and calls in January 2022, ECF No. 12 ¶ 33;

- Ms. Nicholas's accusation that Dr. Hollingsworth was not responding to emails in January 2022, *id.*;

- Dr. Hollingsworth's inability to attend a meeting in January 2022 because Mr. Ashton had not provided the meeting documents in Word format consistent with their agreed-upon reasonable accommodation, *id.* ¶ 34;

- Mr. Ashton's requests for details regarding Dr. Hollingsworth's doctor visits in February 2022, *id.* ¶ 37;

- Mr. Ashton's request that Dr. Hollingsworth add her medical appointments to a public office spreadsheet, *id.* ¶ 41; and

- Management's requirement that Dr. Hollingsworth use personal leave to attend the George W. Bush Stand to Veterans Program, *id.* ¶¶ 42-43.

ECF No. 13-1, at 14-16.[6]

The court concludes that each of these actions meets the standard of "some harm" to the terms and conditions of Dr. Hollingsworth's employment under *Muldrow* because they represent changes that negatively impacted her work environment. ECF No. 1 ¶ 38; *see Muldrow*, 601 U.S. at 350. To be sure, some of these claims seem like mere workplace disputes, but if they were motivated by discriminatory animus, they are actionable. The following hypothetical from *Chambers* explains why: imagine "an employer that provides doughnuts every week for employees but hangs a 'whites only' sign over the doughnuts." 35 F.4th at 878. Being subjected to such a blatantly discriminatory workplace policy (even if the policy is doughnut distribution) is itself a harmful condition of employment. *See id.* To hold otherwise would "frustrate[] Title VII's purpose of ending discrimination in the workplace." *Id.* Thus, because Dr. Hollingsworth maintains that the above actions were taken on the basis of her sex, race, or disability, she has alleged "some harm" to the terms and conditions of his employment sufficient to clear *Muldrow*'s low bar. 601 U.S. at 354 (quoting *Bostock v. Clayton County*, 590 U.S. 644, 658 (2020)).

## 2.     Causation

Dr. Hollingsworth must also allege a causal connection between the adverse actions and her protected traits. *See Baloch*, 550 F.3d at 1196 (Title VII requires but-for causation);

---

[6] The Agency also argued that the January 2022 incident where Mr. Ashton asked Dr. Hollingsworth to turn on her camera is not an adverse action, ECF No. 12-1, at 14, but the court has already concluded that Dr. Hollingsworth failed to administratively exhaust this claim. *See supra*, Part IV.A.2. The Agency does not dispute that Dr. Hollingsworth suffered an adverse action when Mr. Ashton required her to take leave without pay under the FMLA rather than paid OWCP leave. ECF No. 13-1, at 19.

*Montgomery v. McDonough*, No. 22-CV-1715, 2024 WL 1344443, at *6 (D.D.C. Mar. 29, 2024) (explaining that the Rehabilitation Act requires but-for causation; that is, "the disability must be 'the reason that the employer decided to act'" (quoting *Rosen-Kellogg v. Mayorkas*, No. 22-CV-3028, 2023 WL 7697043, at *8 (D.D.C. Nov. 15, 2023))).  One way that a plaintiff can satisfy this burden is "by showing 'that she was treated differently from similarly situated employees who are not part of the protected class.'"  *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (quoting *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)).  While the burden is "not onerous" at the motion-to-dismiss stage, it requires more than the bald assertion that there is a similarly situated comparator.  *SS & T, LLC v. Am. Univ.*, No. 19-CV-721, 2020 WL 1170288, at *4 (D.D.C. Mar. 11, 2020) (quoting *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017)).  "A plaintiff's assertion that [she] is similarly situated to other[s] . . . is just a legal conclusion—and a legal conclusion is never enough."  *Id.* at *5 (second and third alterations in original) (quoting *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019)); *see Keith v. U.S. Gov't Accountability Off.*, No. 21-CV-2010, 2022 WL 3715776, at *3 (D.D.C. Aug. 29, 2022) (granting a motion to dismiss for failure to state a claim and reasoning that "to plausibly plead the causation element [through similarly situated comparators], [the plaintiff] must allege some facts to ground a reasonable inference that the plaintiff was in fact similarly situated to comparator employees").

Another way of showing causation is through direct evidence of discrimination.  Direct evidence removes any need for an inference of causation and "usually takes the form of a 'statement that itself shows . . . bias [against a protected class] in the [employment decision]."  *Oviedo v. Wash. Metro. Area Transit Auth.*, 948 F.3d 386, 394 (D.C. Cir. 2020) (alterations in original) (quoting *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013)); *Sims v. District*

21

*of Columbia*, 33 F. Supp. 3d 1, 9 (D.D.C. 2014) ("[D]irect evidence of discrimination is evidence that, if believed by the fact finder, proves the particular fact in question without any need for inference." (emphasis omitted) (quoting *Manuel v. Potter*, 685 F. Supp. 2d 46, 60 n.11 (D.D.C. 2010))).

Dr. Hollingsworth does not present sufficient evidence to connect her administratively exhausted adverse actions to her sex, race, or disability. To the contrary, the complaint rests on conclusory statements of the legal standard that the court need not credit. *Iqbal*, 556 U.S. at 678. For some of the alleged adverse actions, Dr. Hollingsworth provides no facts relevant to motive at all. For example, she says nothing to indicate a particular reason for Ms. Nicholas's "repeated[]" emails or accusation that she was being non-responsive, ECF No. 12 ¶ 33, nor does she connect the denial of her OWCP leave with her sex, race, or disability. The court cannot infer discrimination on the basis of a protected characteristic from nothing.

With regard to sex, Dr. Hollingsworth alleges that "[o]ther employees who were similarly situated, but were male individuals . . . have been treated more favorably" and that "[s]imilarly[] situated male employees were not subjected to the same . . . adverse treatment." ECF No. 12 ¶¶ 60, 71. In her opposition, she broadly states that "as a multiracial woman, she was treated disparately and denigrated . . . while male employees were not subjected to such demeaning and diminishing treatment." ECF No. 14-1, at 9. Courts have routinely concluded that such bare assertions are insufficient to survive a motion to dismiss. *See, e.g.*, *SS & T, LLC*, 2020 WL 1170288 at *4 ("SS & T cannot merely allege that similarly situated leaseholders not owned by persons of Indian-descent were treated differently and then offer 'nothing more in the way of specific facts or allegations associated with this claim.'" (quoting *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 239 (D.D.C. 2007))).

Dr. Hollingsworth seemingly points to direct evidence of sex discrimination, contending that "Mr. Ashton engaged in clear sexual harassment of Plaintiff based on her sex [by] inquiring about Plaintiff's relationship status, interest in having children, personal appearance in photos posted on social media, and demanding that Plaintiff accept him as a contact on LinkedIn and Facebook."   ECF No. 14-1, at 9.   While these allegations concern incidents that were not administratively exhausted, they can be considered as "background evidence."   *Morgan*, 536 U.S. at 113.   The problem for Dr. Hollingsworth is that it is not at all clear how these incidents connect with any of the adverse actions involving Mr. Ashton that are properly before the court—her inability to attend a meeting because he had failed to provide her documents in an accessible format, the denial of OWCP leave, his request for details about doctor's visits, his request that she add medical appointments to a public spreadsheet, and his instruction that she use personal leave to attend a training program.   This case could look quite different had Dr. Hollingsworth administratively exhausted any claims related to Mr. Ashton's inappropriate behavior in March and April 2021.   But the court simply cannot infer that any inappropriate comments or actions in March and April 2021 betray a sex-based animus that influenced adverse actions several months later.

With regard to race, Dr. Hollingsworth alleges in her complaint that she was "treated differently . . . due to her race" and that "[o]ther employees who were similarly situated, but were non-Hispanic or Caucasian individuals . . . [were] treated more favorably."   ECF No. 12 ¶¶ 81-82; *see* ECF No. 14-1, at 9.   But she provides no "specific facts or allegations associated with this claim," *SS & T, LLC*, 2020 WL 1170288 at *4, and thus fails to clear *Iqbal*'s low bar.

With regard to disability, Dr. Hollingsworth alleges three adverse actions:

- Her inability to attend a meeting in January 2022 because Mr. Ashton had not provided the meeting documents in Word

format consistent with their agreed-upon reasonable accommodation, ECF No. 12 ¶ 34;

- Mr. Ashton's requests for details regarding Dr. Hollingsworth's doctor visits in February 2022, *id.* ¶ 37; and

- Mr. Ashton's request that Dr. Hollingsworth add her medical appointments to a public office spreadsheet, *id.* ¶ 41.

Here, again, Dr. Hollingsworth does not identify any similarly situated comparator, nor does she point to any direct or circumstantial evidence suggesting that these actions were taken because of her disability. The vague assertions in her complaint are simply insufficient to infer any discriminatory motive based on disability. *See Brown v. McDonough*, No. 22-CV-3209, 2024 WL 1344417, at *4-5 (D.D.C. Mar. 29, 2024).

Accordingly, Dr. Hollingsworth's allegations of a causal connection between any adverse employment action and her sex, race, or disability are too threadbare to survive the Agency's motion to dismiss.

## C.    Hostile Work Environment

To establish a hostile work environment claim, the plaintiff must show that her "workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). "A few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002). The incidents must be "adequately connected to each other . . . as opposed to being an array of unrelated discriminatory or retaliatory acts." *Baird*, 662 F.3d at 1252 (D.C. Cir. 2011). In determining whether a plaintiff can proceed with a hostile work environment claim, the court "looks to the totality of the circumstances, including the frequency of the discriminatory

conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Ayissi-Etoh*, 712 F.3d at 577 (quoting *Baloch*, 550 F.3d at 1201).

Dr. Hollingsworth alleges a hostile work environment on the basis of sex and race from the totality of her administratively exhausted adverse actions and the March and April 2021 interactions with Mr. Ashton and Ms. Nicholas, which the court considers as part of her coherent claim. *See supra*, Part IV.A.1.  The Agency responds that Dr. Hollingsworth's allegations "at most constitute cumbersome and potentially frustrating supervision, and routine difference of opinion and personality conflicts, but they do not amount to a hostile work environment."  ECF No. 13-1, at 25.  The court agrees with the Agency.

"The standard for hostile work environment cases is a 'high bar.'"  *Montgomery v. McDonough*, 2024 WL 1344443, at *12 (quoting *Joyner v. Morrison & Foerster LLP*, No. 20-CV-1440, 2023 WL 6313194, at *7 (D.D.C.), *appeal filed*, No. 23-7142 (D.C. Cir. 2023)).  Instances of sufficiently severe or pervasive conduct have included yelling offensive racial epithets, *see Ayissi-Etoh*, 712 F.3d at 577, and forcing an employee to work in an unheated storage room for over a year, *see Singletary*, 351 F.3d at 528 (reversing denial of plaintiff's hostile work environment claim and remanding).

Dr. Hollingsworth's allegations do not clear this high bar.  Instead, her allegations are more akin to *Mohmand v. Broadcasting Board of Governors*, No. 17-CV-618, 2018 WL 4705800 (D.D.C. Sept. 30, 2018), where the court found that the plaintiff's claims about a scheduling change, being criticized in front of coworkers, and being excluded from meetings fell short of alleging a hostile work environment.  *Id.* at *6-7; *see Brooks v. Grundmann*, 851 F. Supp. 2d 1, 6-7 (D.D.C. 2012) (finding no hostile work environment where supervisors "raised their voices during meetings" and "threw a notebook in [plaintiff's] direction"), *aff'd*, 748 F.3d 1273 (D.C.

25

Cir. 2014). And while Mr. Ashton's comments in March and April 2021 were inappropriate and unprofessional, they do not rise to the requisite level to establish a hostile work environment. *See Coles v. Kelly Servs., Inc.*, 287 F.Supp.2d 25, 31 (D.D.C. 2003) (concluding that several sexually explicit e-mails, "although certainly offensive and unprofessional, w[ere] not severe or pervasive enough to rise to the level of a hostile work environment").

### D.     Retaliation

A plaintiff must allege three elements for a Title VII retaliation claim: (1) that she engaged in protected activity (i.e., "opposed any practice" unlawful under Title VII or "made a charge, testified, assisted, or participated" in an "investigation, proceeding, or hearing," 42 U.S.C. § 2000e-3(a)); (2) that she suffered a "materially adverse" action that "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination'";[7] and (3) that there is a causal connection between the protected activity and adverse action, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). The court concludes that all but one of Dr. Hollingsworth's allegations of materially adverse action fall short of what the law requires, and that the remaining one lacks a causal connection to any protected activity.

Most of what Dr. Hollingsworth points to as adverse actions are "petty slights or minor annoyances," which do not rise to the level of materiality. *White*, 548 U.S. at 68. For example, Dr. Hollingsworth alleges that Ms. Nicholas contacted her repeatedly and then called her unresponsive, ECF No. 12 ¶ 33, and that Mr. Ashton asked for information about her doctor's

---

[7] While the *Chambers* and *Muldrow* Courts changed the adverse-action standard for discrimination claims, both Courts clarified that the threshold did not change for retaliation claims, and thus the "materially adverse" standard remains. *Chambers*, 35 F. 4th at 877; *Muldrow*, 601 U.S. at 357-58.

appointments and requested that she record them on a public spreadsheet, *id.* ¶ 41.  These are not examples of "*material* adversity," but instead "trivial harms."   *White*, 548 U.S. at 68; *see Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) ("[N]ot everything that makes an employee unhappy is an actionable adverse action.").

Similarly, the denial of a training opportunity—like participation in the George W. Bush Stand to Veterans Program leadership program—"does not generally constitute an adverse employment decision" in the retaliation context unless it results in "a resultant 'material change in . . . employment conditions, status, or benefits.'"  *Morales v. Gotbaum*, 42 F. Supp. 3d 175, 202 (D.D.C. 2014) (alteration in original) (first quoting *Warner v. Vance-Cooks*, 956 F. Supp. 2d 129, 171 (D.D.C. 2013); then quoting *Dorns v. Geithner*, 692 F. Supp. 2d 119, 133 (D.C. Cir. 2010)).  That is the case here.  First, the Agency did not forbid Dr. Hollingsworth from participating in the program; to the contrary, Mr. Ashton told her about it and wrote her a letter of recommendation.  ECF No. 12 ¶¶ 42-43.  The Agency merely requested that she use personal leave to attend.  *Id.*  That is not a denial but rather the imposition of a reasonable condition.  Second, the complaint does not include any factual allegations that Dr. Hollingsworth's inability to attend the program caused any change in her employment conditions, status, or benefits.  *Morales*, 42 F. Supp. 3d at 202.  Dr. Hollingsworth avers that the "program would have helped [her] create a program consistent with her assigned job duties," ECF No. 12 ¶ 43, but any work-related training opportunity would be helpful—the amended complaint requires more to meet the requisite bar, like a connection to a promotion decision or a disciplinary charge.  *See Warner*, 956 F. Supp. 2d at 171.

Having to take leave without pay instead of paid leave, however, can constitute a materially adverse action.  *See Franklin v. Potter*, 600 F. Supp. 2d 38, 72 (D.D.C. 2009) (explaining that

"being sent home without pay . . . would satisfy a prima facie case for a materially adverse action").  But even assuming that Dr. Hollingsworth suffered a materially adverse action when Mr. Ashton changed her leave from OWCP leave to leave without pay in February 2022, the court must nevertheless dismiss the claim because Dr. Hollingsworth does not allege a sufficient causal connection between any protected activity and the denial of her leave.

Dr. Hollingsworth appears to rely on temporal proximity to establish an inference of causation, arguing that the denial of OWCP leave "came after Plaintiff had already engaged in protected EEO activity."  ECF No. 14-1, at 12.  "Temporal proximity can . . . support an inference of causation . . . but only where the two events are 'very close' in time."  *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).  While there is no bright-line rule, "the Supreme Court has cited circuit decisions suggesting that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation." *Hamilton v. Geithner*, 666 F.3d 1344, 1357-58 (D.C. Cir. 2012).  Here, Dr. Hollingsworth alleges that she engaged in protected activity by requesting accommodations in January 2021 and complaining to Mr. Ashton and Ms. Nicholas about workplace harassment in April 2021.  ECF No. 14-1, at 12 (citing ECF No. 12 ¶¶ 25, 32).  But thirteen and ten months, respectively, elapsed between that protected activity and Mr. Ashton's decision to change her leave from OWCP leave to leave without pay.  Such gaps are too lengthy to establish a causal link based on temporal proximity alone.  *See Hamilton*, 666 F.3d at 1357-58; *see also, e.g.*, *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 86 (D.D.C. 2013) (finding that a delay of four months could not support an inference of causation); *Wilson v. Mabus*, 65 F. Supp. 3d 127, 133-34 (D.D.C. 2014) (same).  Therefore,

Dr. Hollingsworth has failed to plausibly allege that Mr. Ashton changed her leave request because of her protected activity.[8]

### E.      Leave to Amend

In her opposition brief, Dr. Hollingsworth requests leave to amend her complaint to correct "any identified factual discrepancies or deficiencies."  ECF No. 14-1, at 13.  Pursuant to Federal Rule of Civil Procedure 15, a party may amend its pleading once as a matter of course, and thereafter "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a).  Local Civil Rule 15.1 requires a motion for leave to amend to include a proposed amended pleading.  In this district, "[a] bare request in an opposition to a motion to dismiss— without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)."  *Rollins v. Wackenhut Servs. Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012) (quoting *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006)).  Dr. Hollingsworth does not specify the grounds for amendment, nor does she attach an amended complaint.  ECF No. 14.  That is reason enough to deny her request.

### V.      Conclusion

For the foregoing reasons, the court will grant the Agency's motion to dismiss, ECF No. 13.  A contemporaneous order will issue.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date:   September 27, 2024

_____

[8] Dr. Hollingsworth does not argue that Mr. Ashton changed her leave status because of her January 2022 EEO complaint.  That is with good reason, because Dr. Hollingsworth nowhere alleges that Mr. Ashton was aware of that complaint, and "the Supreme Court has held that if the official responsible for the allegedly adverse action is unaware of the employee's earlier protected activity, then the employee cannot establish the causation needed to sustain a retaliation claim." *Maloney v. Blinken*, No. 20-CV-2516, 2021 WL 4306092, at *8 (D.D.C. Sept. 22, 2021) (citing *Breeden*, 532 U.S. at 273-74).